IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LUCAS HENRY,

          Petitioner,

    v.                            Civil Action No.
                                 9:01-CV-1361 (GLS/DEP)

THOMAS RICKS,

          Respondent.

_____

APPEARANCES:                  OF COUNSEL:

FOR PETITIONER:

LUCAS HENRY, *Pro Se*

FOR RESPONDENT:

HON. ELIOT SPITZER           G. LAWRENCE DILLON, ESQ.
Attorney General of the         Assistant Attorney General
State of New York
207 Genesee St.
Utica, New York 13501

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ REPORT AND RECOMMENDATION

      Petitioner Lucas Henry, a New York State prison inmate as a result

of a 1997 New York State conviction for murder, has commenced this

proceeding seeking federal habeas review of that conviction, pursuant to

28 U.S.C. § 2254.  In support of his petition, Henry asserts six separate

grounds for relief, each of which was previously submitted to and rejected

by the state courts.  Applying the requisite, deferential standard to the

state appellate courts' determination rejecting the grounds now advanced

in support of Henry's petition, I find that each of those grounds lacks merit

and therefore recommend denial of Henry's request for habeas relief.

I.    BACKGROUND

Petitioner's murder conviction stems from a shooting which occurred

on February 24, 1993 in the City of Utica, New York.  On that date, while

in an apartment located at Waverly Place, Utica, the petitioner, who is

also known by the nickname "Prince", shot and killed an acquaintance,

Anthony Bookard, who was also known as "Kevin Biggs."[1]  Trial Transcript

("TT") 839, 876-78.  The shooting incident was witnessed by several

individuals including Dennis Coles (a/k/a "Brook"), who testified at trial.

*Id.*  After the shooting, the petitioner left the apartment by way of the back

door.  TT 879.  Upon determining that the victim was dead, Coles and the

---

[1]        According to the medical evidence adduced at trial, the victim's cause of death was listed as a single gunshot wound to the abdomen.  TT 730.

other two individuals, including Syeetha Dingle and a third-party identified only as "Rens", also left the apartment.  TT 880-87.

Following the shooting, Henry returned to the apartment to retrieve the body, which was later discarded in a snow bank located behind a local elementary school.  TT 1051-65.  Accompanying the petitioner while disposing of the body were the three witnesses, including Syeetha Dingle, Coles and Ren, as well as Angie Dingle, Henry's girlfriend.  *Id.*  After disposing of the body, the murder weapon and shell casings, the parties traveled by bus from Utica to New York City, where they dispersed.  TT 1065-73.

II.    PROCEDURAL HISTORY

         A.    State Court Proceedings

As a result of the February 24, 1993 fatal shooting, Henry was indicted by an Oneida County grand jury on or about December 20, 1995 and charged with two counts of murder in the second degree, in violation of N.Y. Penal Law § 125.25.  A jury trial was subsequently conducted in connection with those charges, beginning on January 13, 1997, in Oneida County Court, with County Court Judge Patrick L. Kirk presiding.  At the conclusion of that trial petitioner was found guilty on January 23, 1997 of

murder in the second degree.  Petitioner was subsequently sentenced on April 4, 1997 to a period of incarceration of between twenty-five years and life, based upon the jury's verdict, to be served consecutively to another sentence imposed based upon an unrelated conviction for assault in the second degree.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Judicial Department.  In that appeal petitioner asserted six grounds for reversal, arguing that 1) the verdict was not supported by legally sufficient evidence, and in any event was against the weight of the evidence; 2) the trial court abused its discretion in determining, during a *Sandoval*[2] hearing, that certain prior convictions of the defendant were admissible in the event of his decision to testify at trial; 3) the trial court abused its discretion in admitting prejudicial photographs of the deceased victim into evidence during the course of the trial; 4) petitioner's right to a fair trial was denied when the trial court refused to instruct the jury regarding promises made by the prosecution to an eyewitness; 5) the trial court improperly instructed the jury regarding the significance of evidence of flight and concealment; and 6) petitioner's

---

[2]    *People v. Sandoval*, 34 N.Y.2d 371, 314 N.E.2d 413, 357 N.Y.S.2d 849 (1974).

sentence was unduly harsh and excessive.  Rejecting each of these arguments on the merits, the Fourth Department unanimously affirmed petitioner's judgment of conviction by decision rendered on March 29, 2000.  *People v. Henry*, 270 A.D.2d 936, 706 N.Y.S.2d 565 (4th Dept. 2000).  Leave to appeal that determination to the New York Court of Appeals was denied on October 2, 2000.  *People v. Henry*, 95 N.Y.2d 905, 739 N.E.2d 1151, 716 N.Y.S.2d 646 (2000).

Petitioner has not commenced any state court proceedings collaterally challenging his conviction, either under N.Y. Criminal Procedure Law § 440.10 or seeking a writ of *error coram nobis.*

B.    Proceedings In This Court

Henry's habeas petition was filed with this district on August 30, 2001.  Dkt. No. 1.  In his petition, Henry raises six distinct grounds for relief, arguing that 1) the trial court improperly refused to instruct the jury regarding the promise of leniency made by the prosecution to a witness in the case, thereby depriving him of a fair trial; 2) the trial court's charge regarding the flight and concealment of evidence as consciousness of guilt deprived him of a fair trial; 3) the trial court improperly denied a defense request for dismissal based upon failure to prove the depraved

indifference element of the murder count of which he was convicted; 4) the trial court improperly ruled that if he testified, petitioner could be questioned regarding prior drug and menacing convictions; 5) the trial court abused its discretion by receiving into evidence photographs of the victim's body; and 6) the sentence imposed was unduly harsh and severe. Henry's petition, however, provides little in the way of specifics regarding his claims, either in the form of elaboration in an accompanying or reply memorandum or otherwise.

The office of the New York State Attorney General, acting on behalf of the named respondent, subsequently submitted an answer and a memorandum in opposition to the petition, accompanied by the state records associated with petitioner's prosecution. Those materials were received by the court on or about February 5, 2002. Dkt. Nos. 6, 7.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard Of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  A federal court cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal

7

quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power is premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court.  *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits.  *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

8

In *Sellan*, the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim.  Specifically, that court held that deference is required if the federal claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law.  *Sellan*, 261 F.3d at 311-12.  As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.*

*Sellan*, 261 F.3d at 312 (emphasis added)[3]; *see also Ryan v. Miller*, 303

_____

[3]      In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA's deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

F.3d 231, 246 (2d Cir. 2002).

When a state court's decision is found to be decided "on the merits", that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1523 (2000). Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable". *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also Sellan*, 261 F.3d at 315. The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]" *Francis S.*, 221 F.3d at 111.

B.    Jury Instruction Regarding Prosecution Promises

At trial an issue arose regarding promises which had been made by the prosecution to a witness who testified against the petitioner. Although there is scant information in the record regarding this issue, it appears that the witness was promised some form of leniency in connection with pending charges in return for his or her agreement to testify. At the close

10

of trial, the trial court instructed the jury regarding such potentially

impeaching testimony, charging that

> During the testimony of several witnesses, you
> have heard that he or she may receive an
> advantage or benefit as a result of his or her
> testimony upon this trial.  The fact that a witness
> has been given or promised a benefit or that the
> witness hopes to receive a benefit does not
> disqualify him or her from testifying.  You should,
> however, carefully scrutinize the testimony of the
> witnesses in light of any benefit he or she has
> received or been promised or of which he or she
> may have some hope, which might have an effect
> upon his or her testimony.  The question then
> becomes: Has the witness testified truthfully,
> regardless of his or her ultimate benefit?   Or, has
> he or she testified falsely by reason of such
> benefit?

TT 1457-58.

Petitioner challenges the sufficiency of this instruction and asserts –

although no basis is readily apparent – that the promise of leniency given

by the prosecution was "illegal".  Because that issue was raised to and

rejected by the state court, that ruling is entitled to deference under the

AEDPA.

> 1.   <u>Clearly Established Supreme Court Precedent</u>

Before a federal court may overturn a conviction due to an allegedly

erroneous jury instruction, "it must be established not merely that the

11

instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973) (internal quotations omitted); *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991) (quoting *Cupp*).  Additionally the Supreme Court has observed that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37 (1977) (footnote omitted).  The *Kibbe* court also noted an "omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Kibbe*, 431 U.S. at 155, 97 S. Ct. at 1737.

        2.   <u>Contrary To, Or Unreasonable Application Of, Supreme Court Precedent</u>

Like the Fourth Department, I too find that the trial court's jury instruction regarding such impeachment evidence was sufficient, and that there was no "illegality" surrounding the prosecutorial promise which is at the heart of this ground.  The fact that the prosecutor in this case may have availed himself of the well established – and often necessary –

practice of promising leniency to a witness in return for his or her testimony against a potentially more culpable defendant, is neither unconstitutional nor otherwise prohibited.  *See United States v. Haese*, 162 F.3d 359, 366-67 (5th Cir. 1998); *United States v. Guillaume*, 13 F.Supp.2d 1331, 1337 (S.D. Fl. 1998).  Instead, such an arrangement bears upon the issue of credibility and, as the trial court noted, provides a good reason for jurors to more carefully scrutinize the disputed testimony in order to determine whether it is worthy of belief.

I therefore find that petitioner's first ground for habeas relief lacks merit.

C.     Trial Court's Jury Instructions Regarding Flight and Concealment

In the second ground of his petition, Henry challenges the trial court's jury charge regarding flight and concealment of evidence.  That portion of the jury instructions addressed the evidence at trial which suggested that following the shooting the defendant fled from the scene, but later returned, hid the body and murder weapon, and subsequently traveled to another city.  This argument was presented to, but expressly rejected by, the Fourth Department in its decision unanimously affirming petitioner's conviction.

13

1.    Clearly Established Supreme Court Precedent

_____Inasmuch as this ground, like petitioner's first, attacks the trial

court's jury instructions, it is governed by the standard as applies with

respect to ground one.[4]

2.    Contrary to, Or Unreasonable Application Of, Supreme
        Court Precedent

In its jury instructions, the trial court discussed the concept of flight

and concealment of evidence as bearing upon guilt, cautioning the jury

with regard to such evidence.[5]  TT 1482-85.  Petitioner has cited no

authority tending to suggest that this evenly balanced charge, which

_____

[4]        See pp. 11-12, ante.

[5]        Included among the instructions in this regard is the following statement:

> I instruct you that the proof of conduct
> evidencing consciousness of guilt has slight
> value.  Standing alone, such evidence may
> never be made a basis of a finding of guilty.
> However, when the People have introduced
> other and direct substantial evidence pointing
> towards the guilt of the defendant, then the
> evidence of flight, leaving the apartment,
> immediately leaving the City of Utica, and
> assisting in the hiding of the body may be
> considered by you together with other direct
> and substantial evidence of guilt in arriving at
> your verdict.

TT 1484-85.

14

comports with New York law regarding such matters, *see*, *e.g.*, *People v. Yazum*, 13 N.Y.2d 302, 304, 196 N.E.2d 263, 264, 246 N.Y.S.2d 626, 628 (1963) effectively deprived him of any constitutional or federal statutory right.  Accordingly, I recommend denial of petitioner's second ground for habeas relief on the merits.

    D.    <u>Sufficiency Of Evidence</u>

In his third petition ground, Henry challenges the sufficiency of the evidence of his depraved indifference, asserting that the denial of his motion to dismiss the depraved indifference murder count of the indictment constituted error.  This argument was presented to and rejected by the Fourth Department, the court finding the evidence adduced at trial sufficient to support petitioner's murder conviction.  *Henry*, 270 A.D.2d at 936-37, 706 N.Y.S.2d at 565.  That finding is therefore entitled to deference under the AEDPA.

    1.    <u>Clearly Established Supreme Court Precedent</u>

The Due Process Clause of the United States Constitution protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *See Jackson v. Virginia*, 443 U.S. 307,

315, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970)); *see also Fiore v. White*, 531 U.S. 225, 228-29, 121 S.Ct. 712, 714 (2001) (citing *Jackson*).   In deciding a challenge to the sufficiency of evidence presented at trial, federal courts are to determine "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson*, 443 U.S. at 319, 90 S. Ct. at 2789 (emphasis in original); *see also United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478 (1984) (citing, *inter alia*, *Jackson*).   Moreover, in determining sufficiency of the evidence, a court must look to state law to ascertain the elements of the crime.   *See Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1196 (2000).

The statutory provision under which petitioner was prosecuted for murder provides, in relevant part, that

> [a] person is guilty of murder in the second degree when:
>
> *   *   *
>
> 2.   Under circumstances evincing a depraved indifference to human life, he recklessly engages in

16

> conduct which creates a grave
> risk of death to another person,
> and thereby causes the death of
> another person[.]

N.Y. Penal Law § 125.25(2).  It is against this backdrop that the state court's determination must be measured.

### 2.   Contrary To, Or Unreasonable Application Of, Supreme Court Precedent

Like the Fourth Department, I too find that the evidence in this case, taken as a whole, is more than sufficient to surpass the relatively modest hurdle posed by *Jackson*.  The evidence adduced at trial showed that the petitioner fired a single gun shot at the victim's abdomen, and that the shooting was observed by several eyewitnesses.  Under such circumstances there was ample evidence from which a jury could have found deliberate indifference by petitioner to human life.  I therefore find that the state court's determination that legally sufficient evidence supported defendant's murder conviction is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and thus recommend that the third ground of Henry's petition be denied.

### E.   Sandoval Ruling

In his fourth ground, Henry challenges a *Sandoval* ruling under

17

which the trial court was prepared, had the petitioner chosen to testify on

his own behalf, to allow use by the prosecution of prior drug and menacing

convictions for impeachment purposes.  This ruling was addressed by the

Fourth Department, which rejected the evidentiary claim now asserted by

the petitioner.  *Henry*, 270 A.D.2d at 937, 706 N.Y.S.2d at 565.

### 1.    Clearly Established Supreme Court Precedent

"The right to present evidence is, of course . . . required by the Due

Process Clause."  *Jenkins v. McKeithen*, 395 U.S. 411, 429, 89 S.Ct.

1843, 1853 (1969) (citing, *inter alia*, *Morgan v. United States*, 304 U.S. 1,

18, 58 S.Ct. 773, 776 (1938)).  This right is "particularly fundamental" in

the context of criminal proceedings.  *Jenkins*, 395 U.S. at 429, 89 S.Ct. at

1853.  However, evidentiary rulings by state courts are not ordinarily

subject to habeas review unless they "'so infused the trial with unfairness

as to deny due process of law.'"  *Estelle v. McGuire*, 502 U.S. 62, 75, 112

S.Ct. 475, 484 (1991) (quoting *Lisenba v. California*, 314 U.S. 219, 228,

62 S.Ct. 280, 286 (1941)).

The purpose of a *Sandoval* hearing is to provide a prospective ruling

on the prosecutor's use of a defendant's prior criminal acts for

impeachment purposes.  *Miller v. Portuondo*, 151 F. Supp.2d, 245, 247

18

(E.D.N.Y. 2001) (citing *Sandoval*).   *Sandoval* rulings are "only redressable in a federal habeas corpus proceeding if . . . the particular errors were of constitutional magnitude."  *Hunter v. Greiner*, No. 99 CIV. 4191, 2000 WL 245864, at *4 (S.D.N.Y. Mar. 3, 2000) (citing *Benitez v. Senkowski*, 97 Civ. 7819, 1998 WL 668079, at *7 (S.D.N.Y. Sept. 17, 1998)).  In order to merit habeas relief, the petitioner must establish that 1) the trial court erred in allowing the evidence into the record and 2) the evidentiary errors were "so pervasive as to have denied [petitioner] a fundamentally fair trial."  *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).  Where, as here, the claim is that the trial court was prepared improperly to allow certain matters *into* evidence, the court cannot grant habeas relief unless the disputed evidence "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.  In short it must have been 'crucial, critical, [and] highly significant.'"  *Id.* (quoting *Nettles v. Wainwright,* 677 F.2d 410, 414-15 (5th Cir. 1982)); *see Rios v. Hoke*, No. 85-CV-1241, 1988 WL 101013, at *3 (N.D.N.Y. Sept. 19, 1988) (citing *Collins* and *Nettles*) (McAvoy, J.).

Historically, when evaluating convictions in the face of collateral

habeas challenges alleging error on the part of a trial court, habeas courts

have inquired whether the trial court's error had a "'substantial and

injurious effect or influence in determining the jury's verdict.'" *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993) (citing,

*inter alia*, *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239,

1253 (1946)).  After the enactment of the AEDPA, however, the issue of

whether the applicable test on federal habeas review of a state court

conviction remains the one set forth in *Brecht,* or instead should be based

upon a determination of whether the state court's decision was contrary

to, or involved an unreasonable application of *Chapman v. California*, 386

U.S. 18, 87 S. Ct. 824 (1967), was viewed as an "open question" within

the Second Circuit.[6]  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir.

2005) (citation omitted); *Harvall v. Phillips*, No. 03-CV-2968, 2005 WL

2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), the Second

Circuit resolved one aspect of this question by holding that when a state

court explicitly conducts a harmless error review of a claimed

---

[6]      In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.  386 U.S. at 24, 87 S. Ct. at 828.

constitutional error, a federal habeas court must evaluate whether the

state courts unreasonably applied *Chapman*. *See Gutierrez*, 389 F.3d at

306; *see also Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004).

Where, however, as is the case here, the state court did not engage in a

harmless error analysis, the Second Circuit has yet to decide whether the

*Chapman* or *Brecht* test is to be applied. *See Gutierrez*, 389 F.3d at 306-

07 & n.7; *Ellis v. Phillips*, No. 04CIV.7988, 2005 WL 1637826, *24 n.45

(S.D.N.Y. July 13, 2005) (Peck, M.J.) (collecting cases); *Holmes v. Artus,*

No. 03CIV.7065, 2005 WL 1027195, at *18 (S.D.N.Y. May 4, 2005) (citing,

*inter alia*, *Gutierrez,* 389 F.3d at 306 and *Benn*).  In view of the uncertainty

within this circuit, I will examine the issues now raised by petitioner

regarding these claims, utilizing both standards.

### 2.   Contrary To, Or Unreasonable Application Of, Supreme Court Precedent

After conducting a *Sandoval* hearing, the trial court ruled that the

prosecution would be permitted to offer evidence regarding a marijuana

possession conviction from in or about 1991, a menacing conviction in

1992, a drug possession conviction from 1994 and an assault conviction

from 1995, although the inquiry into the background of the menacing

conviction as well as the assault conviction, which apparently also

involved a shooting, was to be prohibited.  TT 14-17.  The trial court also

precluded inquiry into two bad acts committed by the petitioner in 1993.

*Id.*

Deterred, he claims, by the court's *Sandoval* ruling, Henry chose not

to testify in his defense at the trial.  Accordingly, it does not appear a jury

was ever apprised of the convictions which were the subject of the trial

court's *Sandoval* ruling.  "It is well-settled that a petitioner's failure to

testify at trial is fatal to any claims of constitutional deprivation arising out

of a *Sandoval*-type ruling. . . . The reason that a habeas petitioner's failure

to testify at trial is 'fatal to any claims arising out of a *Sandoval* type ruling'

is that absent such testimony, a court has no 'adequate non-speculative

basis upon which to assess the merits of that claim.'" *McEachin v. Ross*,

951 F. Supp. 478, 481 (S.D.N.Y. 1997) (quoting *Peterson v. LeFevre*, 753

F.Supp. 518, 521 (S.D.N.Y.), *aff'd mem.*, 940 F.2d 649 (2d Cir. 1991));

*see*, *e.g.*, *Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 463

(1984) ("[a]ny possible harm flowing from a district court's *in limine* ruling

permitting impeachment by a prior conviction is wholly speculative");

*Shannon v. Senkowski*, No. 00 Civ 2865, 2000 WL 1683448, at *6

(S.D.N.Y. Nov. 9, 2000) ("Second Circuit law has created a bright-line

rule, however, barring habeas relief for allegedly erroneous *Sandoval*

rulings in instances where a defendant elects not [to] testify") (citing

cases); *Beverly v. Walker*, 899 F.Supp. 900, 909 (N.D.N.Y. 1995) (Scullin,

J.) (quoting *Peterson*), *aff'd*, 118 F.3d 900 (2d Cir.), *cert. denied*, 522 U.S.

883, 118 S.Ct. 211 (1997).

In light of his failure to testify at the trial which led to his conviction,

petitioner is effectively precluded from obtaining the relief he seeks in his

fourth ground.  I therefore recommend rejection of this ground of Henry's

petition as well.

     F.    Admission Of Photographs Of The Victim's Body

In his fifth ground for relief, petitioner argues that admission into

evidence of several photographs, including those of the victim's frozen

body in the snow bank and both his clothed and nude body taken during

an autopsy, was unduly prejudicial and deprived him of a fair trial.  This

argument was also addressed and rejected by the Appellate Division in its

decision affirming petitioner's conviction.  *See Henry*, 270 A.D.2d at 937,

760 N.Y.S.2d at 565-66.

     1.    Clearly Established Supreme Court Precedent

_____Inasmuch as this ground, like petitioner's fourth, attacks the trial

23

court's evidentiary rulings, it is governed by the standard as applies with respect to ground four.[7]

### 2.   Contrary To, Or Unreasonable Application Of, Supreme Court Precedent

Other than to allege in broad and general terms that the trial court abused its discretion in receiving into evidence "numerous photographs of the victim's frozen body in the snow bank and both his clothed and nude body at eh [sic] autopsy" petitioner does not elaborate, nor does he specify which photographs were either duplicative of prior exhibits, or unduly prejudicial.  This shortcoming represents a failure on petitioner's part to satisfy his burden of proof in this habeas proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing, *inter alia*, *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 579 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review); *Frazier v. New York,* 187 F. Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted).

Despite this failure, I have reviewed the evidence, including the disputed photographs, to determine whether there is any palpable merit to petitioner's claim that he was unduly prejudiced by their admission into

---

[7]     *See* pp. 18-21, *ante.*

evidence.  Having conducted that review I am unable to conclude that

their admission into evidence had a substantial and injurious effect or

influence in determining the jury's verdict.  *E.g.*, *Alfini v. Lord*, 245 F.

Supp.2d 493, 500 (E.D.N.Y. 2003) (citations omitted); *Robles v.

Senkowski*, No. 97 CIV. 2798, 2002 WL 441153, at *7  (S.D.N.Y. Mar. 21,

2002) ("introduction of gory photographs was unlikely to have had

substantial and injurious effect or influence in determining the jury's

verdict") (citing *Brecht*) (internal quotations omitted).  I also find that the

Fourth Department's determination that the evidence was properly

admitted was neither contrary to, nor an unreasonable application of,

*Chapman*.

In light of the foregoing, I recommend that ground five of Henry's

petition be denied.

G.    Excessive Sentence

In his sixth and final ground, petitioner argues that his sentence of

twenty-five years to life for the crime of murder in the second degree was

unduly harsh and excessive, asking this court to order reduction to a

lesser sentence of an unspecified duration.  Once again this argument is

one which was presented on appeal, but rejected by the Fourth

Department.  *Henry,* 270 A.D. 2d at 937, 706 N.Y.S.2d at 566.

>    1.    Clearly Established Supreme Court Precedent

The Eighth Amendment forbids only extreme sentences which are

"grossly disproportionate" to the crime.  *Harmelin v. Michigan*, 501 U.S.

957, 995, 111 S.Ct. 2680, 2701-02 (1991); *Lou v. Mantello*, No.

98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001) (citing

*White*).  "No federal constitutional issue is presented where, as here, the

sentence is within the range prescribed by state law."  *White v. Keane*,

969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692

F.Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989));

*see also Jackson v. Lacy*, 74 F.Supp.2d 173, 181 (N.D.N.Y. 1999)

(McAvoy, C.J. & Smith, M.J.) ("[i]t is well-settled . . . that a prisoner may

not challenge the length of a sentence that does not exceed the maximum

set by state law"; citing *White*).

>    2.    Contrary To, Or Unreasonable Application Of, Supreme
>           Court Precedent

Since the petitioner does not assert that the sentence received was

not authorized by statute, and in fact the sentence imposed fell within the

range prescribed based upon petitioner's conviction of a Class A-I felony,

*see* N.Y. Penal Law §§ 70.00(2)(a), (3)(a)(ii), this court is not empowered

to grant habeas relief affording petitioner the remedy he now seeks.

Since Henry has not established that his concededly lawful sentence of twenty-five years to life in prison violated any of his constitutional rights, I recommend that the court decline his invitation to reduce that sentence, and deny the sixth ground of his petition.

IV.   SUMMARY AND RECOMMENDATION

Applying the requisite, deferential standard to the Appellate Division's ruling on each of the claims now raised, I find that none of the six grounds asserted by the petitioner in support of his quest for habeas relief contains merit.  It is therefore hereby

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.

Dated:      November 2, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\habeas corpus\henry.wpd

28